# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HELWA H. QASEM,<br><br>Defendant. | CASE NO. 2:22-CR-87<br><br>JUDGE SARAH D. MORRISON<br><br>Sentencing Memorandum of the United States |

The United States hereby submits its Sentencing Memorandum with respect to Defendant Helwa H. Qasem. For the reasons that follow, a sentence of 18 months of imprisonment and a 3-year term of supervised release, below the applicable guidelines range, would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

## BACKGROUND

Defendant Helwa H. Qasem was a United States Probation Officer in the Southern District of Ohio for approximately 12 years. PSR ¶¶ 5, 63. In that position, she supervised individuals who had been convicted of federal crimes and were serving terms of probation or were serving terms of supervised release following the end of their prison terms. PSR ¶ 5. Ms. Qasem's job was to supervise offenders in the community to reduce the risk they posed to the public. To that end, she had the authority to monitor them by phone and in person, meet them at their homes or their work, direct them to necessary services, and otherwise address any issues that impeded their ability to comply with their release conditions. PSR ¶ 6.

The Probation Office is an arm of the Court, and Ms. Qasem had the duty to ensure individuals under her supervision complied with the Court's orders. *Id.* When they did not do so, she had a corresponding duty to report noncompliance to the Court. *Id.* Major violations, such as

unlawfully distributing drugs to another person, could result in the individual being sent back to prison, not to mention new criminal charges. *Id.*

In her role as a U.S. Probation Officer, Ms. Qasem unlawfully obtained Xanax pills, cash, a bag, a sweater, and various personal services from individuals under her supervision. PSR ¶¶ 7–9. On multiple occasions, she extorted property from at least four offenders. *Id.* She violated her duties as a Probation Officer by extorting this property and by not reporting her supervisees' criminal activity to her supervisor or the Court. PSR ¶ 9.

Ms. Qasem also provided confidential information about a person seeking to become a government cooperator to an individual under her supervision. PSR ¶ 10. She had received a confidential Columbus police report in which the officer stated that he had met with an individual who was trying to become a confidential informant. *Id.* That individual stated that the person under Ms. Qasem's supervision was a drug dealer and provided specifics about his drug trafficking activity. *Id.* The report contained the name and photograph of the person seeking to become a confidential informant. *Id.* Ms. Qasem did not report these allegations to her supervisor or to the Court. Instead, shortly after she received the report, she showed the picture of the person seeking to become a confidential informant to the individual under her supervision and told him to stay away from the potential informant. PSR ¶ 11.

The Federal Bureau of Investigation learned of Ms. Qasem's crimes and confronted her. She admitted her wrongdoing during an interview. Thereafter she obtained counsel, and the Parties engaged in plea negotiations.

On May 23, 2022, the United States Attorney filed a Bill of Information charging Ms. Qasem with one count of Extortion Under Color of Official Right, in violation of 18 U.S.C.

§§ 1951(a) and (b)(2). (Information, R.2.) On the same day, the Parties filed a Plea Agreement to resolve this case. (Plea Agreement, R.3.) In it, Ms. Qasem agreed to plead guilty to the Information, and the Parties stipulated to multiple provisions of the U.S. Sentencing Guidelines. (*Id.* at 5, 7.) She entered a guilty plea on June 14, 2022.

The Probation Office released the Final Presentence Investigation Report on August 26, 2022. Sentencing is scheduled for November 29, 2022.

## ARGUMENT

The Probation Officer calculated that Ms. Qasem's Total Offense Level is 17 and that her Criminal History Category is I. PSR ¶¶ 26, 31. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges of 24 to 30 months of imprisonment; a fine of $10,000 to $95,000; and supervised release of 1 to 3 years. PSR ¶¶ 72, 76, 83. There are no unresolved objections. Ms. Qasem makes a request for a downward departure. The United States will address that request and then will turn to the statutory sentencing factors of 18 U.S.C. § 3553(a).

**I.     Ms. Qasem's motion for a downward departure based on family ties and responsibilities should be denied.**

Ms. Qasem first contends that a downward departure is appropriate based on her family ties and responsibilities. (Defendant Sentencing Memorandum, R.19 at 92–95.) Although the United States believes that Ms. Qasem's obligations to her minor daughter warrant a downward variance based on the § 3553(a) factors, it does not agree that a downward departure is warranted.

In requesting a departure on the basis of family obligations, the Defendant faces an uphill climb. The U.S. Sentencing Commission has made plain that "family ties and responsibilities are

3

not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. Although departures on this ground are not prohibited, they are unusual. An Application Note to the guideline provides factors to help determine whether a particular case warrants a departure on these grounds, including whether the "loss of caretaking or financial support" caused by the defendant's incarceration "substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." U.S.S.G. § 5H1.6 app. n. 1(B)(ii).

The Defendant's family responsibilities are not the only consideration. In deciding whether a departure is warranted under § 5H1.6, the Court must also consider "[t]he seriousness of the offense." U.S.S.G. § 5H1.6 app. n. 1(A)(i).

The United States believes the Defendant's family responsibilities do not warrant a departure and are a more appropriate consideration for a variance under 18 U.S.C. § 3553(a). The family responsibility that is most significant in this case is Ms. Qasem's obligations to her 10-year-old daughter. Her daughter has been diagnosed with developmental delays, autism, and more, and she is nonverbal. PSR ¶¶ 41–42. It is clear that her daughter requires a high level of care. The PSR outlines why her daughter's father is unlikely to provide adequate care for his daughter during Ms. Qasem's incarceration. PSR ¶¶ 40, 43–44.

On the record before the Court, however, Ms. Qasem does not meet the high standard for a departure based on a discouraged factor. The PSR and the Defendant's Sentencing Memorandum do not sufficiently establish that Ms. Qasem's mother would be unable to care for the children for the duration of an 18-month sentence. The PSR lists some of her mother's health conditions in a single sentence, but provides no detail of the severity of these conditions. *See* PSR ¶ 36. Her mother lives with the family. PSR ¶ 45. Without more specifics about the abilities

4

of Ms. Qasem's mother to care for the children, the record does not establish the exceptional circumstances that a departure would require.

A departure is also not warranted in light of the seriousness of the offense. *See United States v. Frazier*, 547 F. App'x 729, 737 (6th Cir. 2013) ("[A] departure has to be weighed against the seriousness of the offense."). Ms. Qasem committed a serious abuse-of-power offense with negative effects on the administration of justice that go beyond this case. The nature and circumstances of her offense are more fully outlined below. With a Total Offense Level of 17, Ms. Qasem would need a nine-level departure before her guidelines range would be 0–6 months—that is, before her recommended sentence of probation would be a within-guidelines sentence. Such a departure would give too little weight to the seriousness of the offense. The request for a departure should be denied.

**II.     Based on the statutory sentencing factors, the United States recommends a term of imprisonment of 18 months.**

Turning to the § 3553(a) factors, the United States recommends a below-guidelines sentence of 18 months in prison, to be followed by a three-year term of supervised release.

*Nature and circumstances of the offense.* For 12 years, the Defendant was a U.S. Probation Officer serving this District and working in the Columbus courthouse. PSR ¶¶ 5, 63. She supervised individuals on probation and supervised release, ensuring their compliance with court orders. PSR ¶ 6. Between 2016 and 2018, she used her official position to extort multiple individuals under her supervision. PSR ¶ 7.

Three of these individuals, which this Sentencing Memorandum will refer to as PERSON A, PERSON B, and PERSON C, unlawfully provided Ms. Qasem with Xanax pills. PSR ¶ 8. Needless to say, distribution of controlled substances violated the terms of supervised

release for PERSONS A, B, and C, but Ms. Qasem did not file a violation report or otherwise report their illegal activity. *Id.* Ms. Qasem was addicted to Xanax, and the pills were for her personal use. PSR ¶¶ 8, 53.

If Ms. Qasem's criminal activity stopped at obtaining Xanax, then it could be understood (though not excused or justified) as a consequence of her addiction. But her extortion did not stop there. Ms. Qasem unlawfully obtained a sweater and a bag from PERSON D—a person who notably did not provide Xanax to her. PSR ¶ 8. Ms. Qasem's extortion of PERSON A went even further. She took cash from him. PSR ¶ 9. She also received a panoply of personal services from him. *Id.* PERSON A had a business with employees, and Ms. Qasem repeatedly got PERSON A to send workers to her home to perform tasks for her personal benefit. *Id.* When she moved from her previous home to her current home, she had PERSON A's workers move her and her family's belongings. *Id.* She also had them fix blinds in her home; fix a clothes dryer, a dishwasher, and a washing machine; and repair the car of one of her relatives. *Id.* They also picked up Xanax from PERSON B and brought it to Ms. Qasem. *Id.* Although the parties dispute whether she paid for these services at all, they agree that she at least did not pay market rate. *Id.* The workers were at her beck and call, for the sole reason that she had supervisory power over PERSON A. *Id.* This was not mere drug-seeking behavior, but instead was an extraordinary abuse of power.

Ms. Qasem's crime was not isolated to a single incident or to a short period of time. It spanned parts of three years and involved multiple individuals under her supervision. PSR ¶ 7. The fact that she extorted her probationers repeatedly over an extended period of time aggravates her culpability.

6

Ms. Qasem's position as a U.S. Probation Officer equipped her with several tools that enabled her crime. She had access to her supervisees' "personal records concerning their physical and mental health, addictions, finances," prior criminal history, employment record, prior drug use, and more. *United States v. Bresnahan*, 400 F. Supp. 3d 793, 801 (D. Minn. 2019). She had the authority to monitor her supervisees in person, including visits to their workplaces and homes. *See* PSR ¶ 6. Ms. Qasem used that knowledge, authority, and access to commit her crimes. As her Sentencing Memorandum says, she accessed drugs from "people she supervised who she suspected had ready access." (Defendant Sentencing Memorandum, R.19 at 96.) Her position of authority also made it more likely she would avoid detection: She "took advantage of their status . . . as convicted felons, knowing that [her] words would be believed over theirs." *Bresnahan*, 400 F. Supp. 3d at 801. Tellingly, the people Ms. Qasem extorted provided information to law enforcement only after they were no longer under her supervision. That is no surprise given the "power dynamics and control a probation officer exerts over those [she] supervises." *Id.* at 802.

Ms. Qasem's acts also directly harmed the individuals under her supervision. She had an obligation to promote the rehabilitation of the individuals under her supervision and to help them reenter society. She instead encouraged them to recidivate by extorting drugs and other property from them. Although the specific effects of her behavior on their future compliance cannot be known, she plainly sent the message that their release conditions were not important. This harm to the individuals under her supervision, and to their efforts to remake their lives, is real.

Most destructively, Ms. Qasem also revealed the identity of a person seeking to become a confidential informant for the Columbus Division of Police to an individual under her

supervision. PSR ¶ 10. In the course of her ordinary duties, she received a copy of a police report describing that PERSON E had provided officers with incriminating information about PERSON A. *Id.* PERSON E said PERSON A was a drug trafficker who distributed approximately 250 grams of cocaine and heroin per week, and who used his business as a front to hide his drug activity. *Id.* The report contained additional investigative information designed to corroborate these claims. *Id.* The report contained the name and photograph of PERSON E. *Id.* At the time, PERSON A was under Ms. Qasem's supervision.

There was no doubt this report was confidential. For one thing, the Columbus police investigation was covert, and officers were investigating the allegations. To remove any doubt, every page of the police report was labeled "CONFIDENTIAL." *Id.* Yet Ms. Qasem did not keep it secret. Instead, she met in person with PERSON A, showed him the photograph of PERSON E, and told him to stay away from PERSON E.

It is no exaggeration to say that this disclosure could have gotten PERSON E killed. Those who provide information against drug trafficking organizations may face reprisal, including violence. Ms. Qasem's disclosure was reckless and perilous. Most immediately, it placed PERSON E in harm's way. It also harmed the public interest in effective law enforcement by tipping off PERSON A to someone who was providing incriminating information about him. And, on a broader scale, it discourages citizens from assisting legitimate investigations. As the Supreme Court has said, "preserving [the] anonymity" of informants "encourages" individuals to "communicate their knowledge of the commission of crimes to law-enforcement officials." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Ms. Qasem's disclosure of PERSON E's identity created these serious short-term and long-term risks.

Ms. Qasem's acts on this score cannot be explained away with reference to her substance abuse. There is not a straight line between her Xanax use and her decision to help PERSON A avoid detection by the police. That may be why her Sentencing Memorandum is entirely silent as to this point. It contains not one word about this serious breach of public trust. Ms. Qasem's substance abuse and the other circumstances of her life at the time cannot rationalize the decision to disclose PERSON E's identity to PERSON A.

Putting all this together—Ms. Qasem's extortion to obtain drugs, her extortion to obtain additional goods and services, her power as a Probation Officer, and her dangerous release of confidential information—this offense warrants the recommended term of imprisonment.

*Need to promote respect for the law.* Because of the special role probation officers play in our federal system, the harm caused by Ms. Qasem's crime goes beyond the specific individuals who were the object of her extortion. Every day, the liberty of people on supervised release and probation turns on the word of U.S. Probation Officers. Violation petitions by probation officers commonly lead to arrest warrants, and the allegations in those reports are rarely challenged by cross examination of the writing officer. In fact, there are special legal obstacles to doing so. *See* Volume 20, Chapter 8 of the *Guide to Judiciary Policy*, vol. 20, ch. 8 (establishing procedures for obtaining testimony and documents of U.S. Probation Officers); S.D. Ohio Crim. R. 32.3(b) (adopting these procedures in this Court). The Court trusts the word of probation officers. The public servants who work for the U.S. Probation Office have earned that trust. But offenses like the Defendant's undermine that trust and disrupt the proper functioning of the judiciary. If the Court cannot trust that probation officers will carry out their duties in good faith, the probation

and supervised release system will not work. The recommended sentence would help promote respect for the law.

The sentence should also promote respect for the law by promoting public belief that corrupt public servants will be appropriately punished. Ms. Qasem used her official position to promote her personal interests, and "[w]hen a corrupt officer receives too lenient a sentence, the public understandably loses confidence in the integrity of its system of justice." *Bresnahan*, 400 F. Supp. 3d at 803. That is particularly true here, where the Defendant's "actions cause the public to call into question every probation officer's interactions with his or her probationers." *Id.* at 802. A sentence of imprisonment will reinforce the public's confidence that crimes like Ms. Qasem's will be punished.

*Need to afford adequate deterrence.* Relatedly, the recommended sentence would afford adequate deterrence to other probation officers, law enforcement officers, and public officials considering criminal activity. General deterrence is a particularly strong interest in this case, as it is whenever a public official is charged with a crime. *See United States v. Nickson*, 195 F. App'x 291, 294 (6th Cir. 2006) (affirming sentence at the top of the guidelines range based in part on district court's explanation that "'public corruption and the assistance in public corruption [are] among the highest and most serious crimes'" (alteration in original)). Prosecutions of U.S. Probation Officers are rare enough that officers around the country will learn of Ms. Qasem's sentence, which will promote deterrence of those tempted to misuse their official positions.

For her part, Ms. Qasem devotes one sentence to general deterrence, stating that this interest would be served simply by the fact that she will be "branded a felon and punished." (Defendant Sentencing Memorandum, R.19 at 101.) The deterrent effects of conviction alone are

not appropriate considerations under § 3553(a). It is "the *sentence* imposed" that must "afford adequate deterrence." 18 U.S.C. § 3553(a)(2) (emphasis added). Being "branded a felon" is not part of Ms. Qasem's sentence; it is an ordinary "consequence[] of [her] prosecution and conviction." *United States v. Bistline*, 665 F.3d 758, 765 (6th Cir. 2012).

More broadly, Ms. Qasem errs in asking the Court to consider the "substantial collateral punishments" that she will face now that she has been "convicted of a federal felony offense." (Defendant Sentencing Memorandum, R.19 at 104.) This is an improper consideration. The Sixth Circuit has made clear that the collateral consequences of conviction are "impermissible factors" in sentencing a defendant. *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013). That is because § 3553(a) requires that "the *sentence* imposed . . . reflect the seriousness of the offense," and "none of" these collateral consequences are Ms. Qasem's "sentence." *Bistline*, 665 F.3d at 765 (emphasis in original) (quoting 18 U.S.C. § 3553(a)(2)(A)). The stigma of the Defendant's conviction is inherent in every felony prosecution regardless of sentence. Beyond that, consideration of these consequences would create unseemly results. Consideration of collateral consequences, such as stigma in the community, "would tend to support shorter sentences in cases with defendants from privileged backgrounds, who might have more to lose along these lines." *Id.* at 765–66. The Court should reject Ms. Qasem's request for leniency based on the collateral consequences of her conviction.

From the perspective of deterrence, Ms. Qasem's request for a noncustodial sentence is particularly inappropriate in a public corruption case. As the Tenth Circuit has said, "we fail to see how a noncustodial sentence would deter public officials from soliciting bribes." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015). Adequate deterrence is particularly

important in light of Ms. Qasem's former position: "It must be made plain to probation officers across the nation and to the public that behavior such as that exhibited by Defendant is categorically unacceptable and will not be tolerated by a self-respecting and functional democratic government." *Bresnahan*, 400 F. Supp. 3d at 803.

Because general deterrence is particularly important in these circumstances, and because Ms. Qasem's argument that the collateral consequences of conviction would provide sufficient deterrence is based on an impermissible consideration, a noncustodial sentence is not appropriate in this case.

*History and characteristics of the defendant.* Two aspects of Ms. Qasem's personal life deserve special attention: the effect her sentence would have on her daughter, and her past substance abuse. The United States believes that her obligations to her daughter warrant a below-guidelines—but not a noncustodial—sentence.

Starting with the effect on Ms. Qasem's daughter: Every time the Court sentences a defendant, the effects of the sentence ripple outward to the defendant's loved ones. The effects in this case, however, go beyond those in the typical case. The Defendant's daughter is nonverbal and has been diagnosed with developmental delays and autism. PSR ¶¶ 41–42. Unsurprisingly, that has affected her home and school life. *Id.* Ms. Qasem is her primary caregiver.

The United States agrees that a downward variance is warranted, but adamantly opposes a noncustodial sentence. The United States' recommended sentence is an effort to balance the harm that Ms. Qasem's incarceration will cause to her daughter with the aggravating circumstances of her crime. A six-month variance below the guidelines range would reduce the harm to Ms. Qasem's daughter and the burden that would be placed on other caregivers. A

noncustodial sentence, however, would give insufficient weight to the seriousness of the offense, the need for general deterrence, and the need to promote respect for the law. It is rare for a federal court employee to be prosecuted. The harms caused by Ms. Qasem's crimes are significant. A sentence of 18 months of imprisonment would adequately take those considerations into account while not incarcerating Ms. Qasem for an undue length of time in light of her daughter's needs.

Ms. Qasem's history of substance abuse presents a complicated factor for the Court's consideration. As noted above, her extortion of Xanax pills from individuals under her supervision can reasonably be seen as drug-seeking behavior. But her extortion went beyond that, including cash, a bag, a sweater, and a number of personal services. And her addiction does not easily explain her disclosure of PERSON E's identity. In addition, the Sentencing Commission has recognized that "[s]ubstance abuse is highly correlated to an increased propensity to commit crime." U.S.S.G. § 5H1.4. The fact that Ms. Qasem is a recovering addict presents a greater risk of recidivism as a result. All of these factors related to her history of substance abuse—both mitigating and aggravating—are proper factors for the Court's consideration.

*Need to avoid unwarranted sentence disparities.* A noncustodial sentence here would also present unwarranted sentence disparities among similar defendants. In the cases the United States could identify, federal probation officers who commit corruption offenses ordinarily receive a period of incarceration:

- Former U.S. Probation Officer Enoch Eller, Jr., was sentenced to six months of imprisonment, 40 hours of community service, and a $5,000 fine after he falsely reported that he had conducted drug testing and completed home visits of individuals under supervision when he had not in fact done so. *United States v. Eller*, No. 1:21-

CR-70 (S.D. Ga.); *see* https://www.justice.gov/usao-sdga/pr/former-federal-probation-officer-pleads-guilty-false-statements-regarding-performance.

- Former U.S. Probation Officer Rachel Howze was sentenced to a split sentence of 5 months in prison and 5 months on home confinement following her obstruction of justice conviction for accessing confidential information related to a drug trafficking investigation and alerting the sister of the target of the investigation. *United States v. Howze*, No. 2:16-CR-130 (W.D. Penn.); *see* https://www.justice.gov/usao-mdpa/pr/former-us-probation-officer-sentenced-obstruction-investigation.

- Former U.S. Probation Officer J. Clayton Bedell was sentenced to three years of probation, 360 hours of community service, and a $1,500 fine after he falsified official records to conceal his failure to contact and perform drug tests on probationers. *United States v. Bedell*, No. 1:02-CR-166 (D. Colo.); *see* https://www.justice.gov/archive/opa/pr/2002/October/02_crm_566.htm.

- Former U.S. Probation Officer Linda Whitehead was sentenced to one year in prison following her mail fraud conviction for submitting phony urine samples to protect a person under her supervision who gave her shoplifted clothing in return. *See United States v. Whitehead*, No. 98-CR-165 (D. Minn.); *United States v. Whitehead*, 187 F.3d 645 (8th Cir. 1999) (per curiam) (unpublished table decision).

Given the difference between their crimes, this list does not contain two U.S. Probation Officers who were convicted of serious sex crimes against individuals on supervision (and who each received terms of imprisonment). Only one of the above individuals received a sentence of probation. Noncustodial sentences for federal probation officers are the exception, not the rule.

Given the nature and circumstances of Ms. Qasem's offense, her history and characteristics, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to avoid unwarranted sentence disparities, and the other facts and circumstances of this case, the recommended sentence would satisfy 18 U.S.C. § 3553(a).

## CONCLUSION

For the above reasons, a sentence of 18 months of imprisonment and a three-year term of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

**Respectfully submitted,**

KENNETH L. PARKER
United States Attorney


s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
ELIZABETH A. GERAGHTY (0072275)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email:  peter.glenn-applegate@usdoj.gov
 elizabeth.geraghty@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 22nd day of November, 2022, electronically upon Steven S. Nolder, counsel for Defendant Helwa H. Qasem.

      s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney